IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

LEEANNE BRACKETT                                         PLAINTIFF

v.                        No. 1:19-cv-98-DPM

FEDERAL INSURANCE COMPANY,
member insurer of the Chubb Group of
Insurance Companies                                      DEFENDANT

MEMORANDUM OPINION AND ORDER

Ronnie Brackett worked for Fluor Corporation and enrolled in its
ERISA-governed accidental death and dismemberment plan.   He
named his ex-wife, Leeanne Brackett, as his beneficiary.   Federal
Insurance Company insured the plan.   *AR 76*.   Fluor is the plan
administrator;  Federal is also the claim administrator.   *AR 85*.   The
policy has an exclusion about accidents and injuries resulting from
driving while intoxicated.   *AR 26*.   Around 1:30 on a Saturday morning
in July 2017, Ronnie's pick-up truck left the road and crashed.   He was
taken to a local hospital.   About an hour after the wreck, a police officer
arrived on the scene.   In due course, the officer prepared an accident

report, which described both the scene and the crash.  Ronnie was driving on a straight section of a two-lane highway.  The only adverse weather condition was some fog.  The road was dry.  Ronnie was driving too fast.  He veered off the road to the right, overcorrected as he swung back, and drove off the other side of the road into a light pole.  The truck flipped twice, and Ronnie was ejected.  Because of the downed power lines, it took some time to rescue him.  The officer suspected that Ronnie was driving under the influence of alcohol.  When Ronnie was admitted, approximately forty-five minutes after the accident, the hospital drew a blood sample.  He was not breathing and had no pulse, but was resuscitated.  *AR 159, 197 & 204.*  His blood serum alcohol level was 235 milligrams per deciliter.  *AR 245*.  The medical records indicate that Ronnie typically drank six beers or so on weekends, information presumably gathered from family.  *AR 208*.  Ronnie died a few hours later at the hospital.

Leeanne filed a claim under the policy.  Federal, acting through an agent, denied the claim.  The denial letter cited Ronnie's death certificate, the police report, his blood alcohol level, and the policy's exclusion.  *AR 325–27*.  The letter gave Leeanne sixty days to provide additional information or appeal.  She didn't file more information, but she appealed.  A reviewing committee denied her appeal for the same

–2–

reasons, and gave her another sixty days to submit additional information. *AR 359*. She sent no more information to the insurer. She filed this case in state court; Federal removed it here. Asserting a benefits claim and a fiduciary duty claim, Leeanne seeks judgment based on the administrative record. Federal opposes both, arguing that the complaint should be dismissed with prejudice. Its response amounts to a cross-motion for judgment. The Court has taken the material facts, where genuinely disputed, in the light most favorable to the non-moving party. *Smith-Bunge v. Wisconsin Central, Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019).

The parties disagree about the standard of judicial review. Neither Federal nor Leeanne focuses on the policy's choice-of-law provision, *AR 47*, which might trigger Texas law given Fluor's Irving, Texas address, *AR 3*. Any argument from Texas law either for or against benefits is therefore forfeited. *Craig v. Apfel*, 212 F.3d 433, 437 (8th Cir. 2000). Federal argues for the abuse-of-discretion standard, relying on the familiar *Firestone* precedent and the summary plan description's provision about claims. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Miller v. Hartford Life & Accident Insurance Co.*, 944 F.3d 1006, 1010 (8th Cir. 2019). The entire provision

is in the margin,* but the key words are that Federal has "the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan." *AR 85*. Leeanne argues for *de novo* review, pressing three reasons.

First, she invokes the procedural-irregularity exception. *Boyd v. ConAgra Foods, Inc.*, 879 F.3d 314, 320 (8th Cir. 2018). Her point here is that Federal rushed to judgment without having a solid basis to conclude that Ronnie was intoxicated. The Court is not persuaded. Federal had the hospital records and the police report. She points out

---

* "The Plan Administrator has delegated to Federal Insurance Company, a member insurer of the Chubb Group of Insurance Companies, as claim administrator, the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but is not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The plan administrator also has delegated to Federal Insurance Company, a member insurer of the Chubb Group of Insurance Companies, as claim administrator, the discretionary authority to perform a full and fair review, as required by the Employee Retirement Income Security Act of 1974 (ERISA), of each claim denial which has been appealed by the claimant or his duly authorized representative. All decisions made by the Insurance Carrier shall be final and binding on participants and beneficiaries to the full extent of the law." *AR 85*.

that Federal's math about Ronnie's blood alcohol level was dodgy. True, as the Court will explain, but this error is marginal.

Second, Leeanne says Federal's dual role as claims administrator and insurer raises a conflict of interest.  True, again.  But the conflict, by itself, cannot change the standard of review.  *Boyd*, 879 F.3d at 320–21. Instead, it is a factor in the abuse-of-discretion analysis.  And Leeanne does not explain, drawing on this record, how the conflict played out in any meaningful way.  *Ibid.*  Federal's conflict of interest is entitled to some weight, not significant weight.

Third, Leeanne says Arkansas Rule 101 applies, eliminating the plan's discretionary provision.  Federal's response is persuasive:  this was a "Fluor Employee Group Accidental Death and Dismemberment Plan (for Salaried Employees)."  *AR 75*.  Arkansas Rule 101 is about disability policies.  ARK. ADMIN. CODE 054.00.101-4.  This policy is about benefits for loss of life and limb.  *AR 1–74*.  While Leeanne is correct that several payments at different times are possible, that does not convert this policy into one for long-term or short-term disability, even though everyone would agree that loss of an arm or an eye could be disabling, depending of course on one's job.

The abuse-of-discretion standard applies.   The Court must determine whether Federal's decision was reasonable and supported

by substantial evidence.  *Miller*, 944 F.3d at 1010–11.   The policy's driving-while-intoxicated exclusion provides:

> This insurance does not apply to any **Accident, Accidental Bodily Injury** or **Loss** caused by or resulting from, directly or indirectly, an **Insured Person** being intoxicated, while operating a motorized vehicle at the time of an **Accident**. Intoxication is defined by the laws of the jurisdiction where such **Accident** occurs.

*AR 26* (emphasis original).  The bold terms are defined, though these definitions don't answer the disputed questions.

Ronnie's accident occurred in Independence County.  Arkansas defines intoxicated as "influenced or affected by the ingestion of alcohol [or other drugs] to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself or herself or another person[.]"  ARK. CODE ANN. § 5-65-102(4).  The issue is whether Federal reasonably answered these questions:  When he crashed, was Ronnie intoxicated—did he have enough alcohol in him to substantially alter his reactions, motor skills, and judgment?  If so, was the accident the direct or indirect result?

Ronnie's blood alcohol level at the hospital was two and half times Arkansas's legal limit.  The hospital record shows that his blood serum alcohol level was 235 milligrams per deciliter, *AR 245*, which

equals 0.235 grams per deciliter.   Arkansas's threshold for driving
while intoxicated is 0.08 grams per deciliter, though the statute speaks
in terms of milliliters.     ARK. CODE ANN. §§ 5-65-103(a)(2) &
5-65-204(a)(1)(A).  In Arkansas, a blood serum alcohol level is 1.15 times
the whole blood concentration.     ARK. ADMIN. CODE 007.25.4-D.
Ronnie's blood serum level when he arrived at the hospital was
0.235 grams per deciliter, which equals a whole blood level of
0.20 grams per deciliter.  That's two and a half times the statutory limit.
This is where Federal stumbled.  It concluded that Ronnie's blood
serum level was three times the statutory limit.  *AR 359.*

Leeanne argues the blood alcohol calculation doesn't account for
postmortem effects.  She's correct.  It's not clear exactly how much time
elapsed between the accident and when Ronnie arrived at the hospital
by ambulance.  In the hospital's record, the period is estimated at
forty-five minutes.  It is clear, though, that he was resuscitated and
lived for several hours.  *AR 159 & 197.*  It was not unreasonable for
Federal to rely on the blood alcohol test in these circumstances.
Leeanne also faults Federal's decision not to get a toxicology report.
She doesn't explain, though, why a toxicology report would be more
reliable than the hospital's blood work.  The blood-alcohol issue is not
a close call.

The parties scuffle about the accident report's admissibility, disputing whether Arkansas law controls or the Federal Rules of Evidence apply. That's not the issue. The Court must decide who is entitled to judgment based on the administrative record, which includes the report. Was it reasonable for Federal to give the report weight? The police officer arrived on the scene soon after the accident. There's no indication that the officer had an improper motive. The record doesn't say how much experience he had in evaluating crashes. But, overall, it was not arbitrary for Federal to rely on this kind of public record. The road-conditions evidence is mixed; it was dark and there was some fog. Ronnie, however, was on a straight highway and lost control of his pick-up for no apparent reason around 1:30 on a Saturday morning, a weekend when he often had a few beers. The officer suspected that Ronnie was under the influence when he crashed.

Given all the circumstances, Federal's conclusion that Ronnie was intoxicated, and that his condition resulted in the accident, was reasonable and supported by substantial evidence. Leeanne is not entitled to the death benefit. Her fiduciary duty claim duplicates her benefits claim. For both, she relies on substantially the same theory of liability. *Silva v. Metropolitan Life Insurance Co.*, 762 F.3d 711, 728

(8th Cir. 2014).   Plus, the criminal law's "beyond a reasonable doubt" standard doesn't apply.   This claim also fails.

\*   \*   \*

Brackett's motion for judgment, *Doc. 10*, is denied.   Federal is entitled to judgment.   The Court will dismiss her complaint with prejudice.

So Ordered.

NPMarshall Jr.
D.P. Marshall Jr.
United States District Judge

21 August 2020